THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

*DOC64503092258087812700020888390000000*

# REGIONS

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Bank/App | Loan No | Account | Officer |
|---|---|---|---|---|---|---|
| $4,500,000.00 | 03-01-2022 | 07-30-2023 | 092 | [redacted]39 | [redacted]27 | B1MK6 |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** MI PULPE, LLC
3501 NW 67TH ST #B
MIAMI, FL 33147

**Lender:** Regions Bank
FT LAUDERDALE: FT LAUDERDALE BRANCH
100 SE 3RD AVENUE
FLMI66234T
FORT LAUDERDALE, FL 33394

**Principal Amount: $4,500,000.00** **Date of Note: March 1, 2022**

**PROMISE TO PAY. MI PULPE, LLC ("Borrower") promises to pay to Regions Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Million Five Hundred Thousand & 00/100 Dollars ($4,500,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.**

**PAYMENT. Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on July 30, 2023. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning March 17, 2022, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied to accrued interest, then principal, then late charges, then miscellaneous fees; provided, that Lender reserves the right to apply payments to outstanding indebtedness and obligations in any order that Lender may determine in its sole discretion and Lender may change the methodology for the application of payments at any time without notice to Borrower. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Daily Simple SOFR Rate (as defined below) (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each Lender Business Day. Borrower understands that Lender may make loans based on other rates as well. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 3.250 percentage points over the Index (the "Margin"). Under no circumstances will the Index be less than zero percent (0%) per annum. If the Index becomes "unavailable" during the term of this loan, Lender may designate a substitute index and notify Borrower. NOTICE: Under no circumstances will the effective rate of interest on this Note be less than 3.250% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.**

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Regions Bank, P.O. Box 2224 Birmingham, AL 35246.**

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 2.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**DEPOSIT AND TREASURY MANAGEMENT.** Borrower agrees to maintain all deposit account(s) and Treasury Management Services it has in place with Lender from the Loan Date through the termination of this Note. If Borrower seeks additional deposit accounts or Treasury

COPY VIEW

DocuSign Envelope ID: 5ABB131F-9DD2-4CA3-B98B-0307C782A7BF

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

**PROMISSORY NOTE**
**(Continued)**

Management Services after the Loan Date, Borrower agrees to allow Lender the right of first refusal to provide such services. As used herein, "Treasury Management Services" means treasury or cash management services or products for businesses, including but not limited to, deposit accounts and liquidity services, returns services, zero balance accounts, information reporting and digital transaction origination, funds transfers, foreign exchange, imaging services, automated clearinghouse, commercial credit card services, purchasing cards, cardless e-payable services, wire transfer, controlled disbursement, lockbox, payment and data management services (e.g. integrated payables and receivables), cash services, remote deposit capture, fraud prevention services, account reconciliation and reporting and trade finance services. Without in any way limiting the scope or applicability of any other provision in this Note, Borrower understands, acknowledges, and agrees that Lender has the sole and absolute discretion to determine (1) whether or not a breach of this provision will be deemed to be an Event of Default, and (2) the timing of declaring such a breach to be an Event of Default. Borrower agrees and understands that no action, inaction, or delay on the part of Lender in declaring a breach of this provision to be an Event of Default or in exercising any right related to this provision shall operate as a waiver of (1) Borrower's obligations under this provision, (2) Lender's right to declare a breach of this provision to be an Event of Default, (3) the nonwaiver portions of this provision, (4) any other nonwaiver provision contained in this Note, or (5) Lender's right to demand strict compliance with the terms of this Note or enforce the terms of any other agreement between Borrower and Lender.

**CONTINUITY OF OPERATIONS.** Borrower covenants and agrees with Lender that while any amount remains outstanding under this Note or Agreement (as applicable), Borrower shall not, without the prior written consent of Lender: (1) engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, or restructure as a legal entity (whether by division or otherwise), consolidate with or acquire any other entity, change its name, convert to another type of entity, or redomesticate, dissolve, or transfer (whether to a division of Borrower or otherwise) or sell its assets outside of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**FUTURE LLC DIVISIONS.** If Borrower is a limited liability company, any future limited liability company or other entity formed by the division of Borrower (1) shall be deemed a successor or assign of Borrower and shall be jointly and severally liable with Borrower for the repayment of this Note or Agreement (as applicable), (2) will not encumber its assets without the prior written consent of Lender, and (3) if requested by Lender, will pledge such of its assets and equity as collateral for the obligations owed to Lender under this Note or Agreement (as applicable) as deemed acceptable by Lender, in its sole discretion.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.**

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Florida.**

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) **Lender in good faith believes itself insecure.**

**FEES AND EXPENSES FOR LOAN MODIFICATIONS.** Unless prohibited by applicable law or unless it would constitute interest in excess of the maximum rate allowed under applicable law, Borrower agrees to pay upon demand all of Lender's costs and expenses, including reasonable attorneys' fees, incurred in connection with any loan modification, amendment, restatement, supplement, restructuring, waiver or consent relating hereto or thereto, whether or not any such amendment, restatement, supplement, restructuring, waiver or consent is executed or becomes effective.

**BENEFICIAL OWNERSHIP.** If Borrower is a Legal Entity Customer, Borrower shall provide Lender with all information, documentation, and certifications that Lender requests regarding beneficial owners of the Borrower pursuant to 31 C.F.R. § 1010.230. Borrower represents and warrants that the most recent of such information, documentation, and certifications submitted to Lender remains true and accurate. Further, Borrower represents and warrants that Borrower will notify Lender promptly—and in no event no later than at any loan renewal—of any changes to any information, documentation, or certifications provided pursuant to the requirements of this paragraph

"Legal Entity Customer" has its meaning set forth in 31 C.F.R. § 1010.230(e) and includes a corporation, limited liability company, or other entity that is created by a filing of a public document with a Secretary of State or similar office, a general partnership, and any similar business entity formed under the laws of a foreign jurisdiction that opens an account.

**INTEREST AND FEES.** No matter what else may be stated in any other provision of this Note or Agreement (as applicable) or in any other document Borrower may have with Lender, Borrower does not agree or intend to pay, and Lender does not agree or intend to charge any interest or fee for this loan which would in any way cause Lender to contract for, charge or collect more for the loan than the maximum Lender would be permitted to charge or collect by any applicable federal or state law. Any such excess interest or unauthorized fee will be applied first to reduce the unpaid principal balance of the loan, and when the principal has been paid in full, be refunded to Borrower.

**SUSPICIOUS ACTIVITY.** Borrower agrees that Borrower will not act in any manner that may cause Lender to reasonably believe that Borrower has engaged in, or that Borrower intends to engage in, any suspicious activity as described in or contemplated under the Bank Secrecy Act, the USA Patriot Act, or any other similar or related law, whether now or hereafter in effect, or under any regulation issued pursuant to any such law. Further, Borrower agrees that if Borrower's name (or a derivation thereof) appears on a list of suspects issued to financial institutions by the Office of Foreign Assets Control, the Financial Crimes Enforcement Network, the Federal Reserve Board, or any other governmental entity or agency, then Borrower will be conclusively presumed to have acted in a manner that would cause Lender to reasonably believe that Borrower has engaged in, or that Borrower intends to engage in, such suspicious activity.

**DEFENSE COSTS.** In addition to the costs and expenses Borrower has agreed to pay under the "Attorneys' Fees; Expenses" section of this Note, Borrower will pay all costs and expenses incurred by Lender arising out of or relating to any steps or actions Lender takes to defend any unsuccessful claim, allegation, remedy or counterclaim Borrower may assert against Lender. Such costs and expenses shall include, without limitation, attorneys' fees and costs.

**WAIVER OF DEFENSES.** Borrower agrees and acknowledges that Borrower does not have any claims, defenses, counterclaims, setoffs, rights of recoupment, or other claims of any nature whatsoever (including but not limited to claims arising from fraud, misrepresentation, breach of contract, breach of commitment, impairment of collateral or waiver) against Lender, and Borrower hereby expressly waives and releases any and all such claims, defenses, counterclaims, setoffs, rights of recoupment, or other claims of any nature whatsoever that it may have against Lender.

**AUTHORIZATION TO OBTAIN AND PROVIDE TAX RETURN INFORMATION.** Borrower hereby expressly authorizes Lender, and its successors, assigns, affiliates, agents, service providers, and their respective successors or assigns (each, an "Authorized Party"), to obtain and receive Borrower's tax return information at any time and from time to time, as Lender may, in its sole and absolute discretion, deem necessary or desirable for use in connection with the loan or any aspect of any of Lender's business relationships with Borrower whatsoever (a "Permissible Purpose"). Further, Borrower hereby expressly authorizes any Authorized Party to provide tax return information to any other person or entity for any Permissible Purpose at any time and from time to time. By example and not by way of limitation, a Permissible Purpose includes originating, maintaining, managing, monitoring, servicing, selling, collateralizing, obtaining insurance or a guaranty for or on, or securitizing a loan, line of credit, letter of credit reimbursement obligation, or any other obligation whatsoever.

**ELECTRONIC SIGNATURE AND DELIVERY.** With respect hereto (this "Instrument," which definition is used solely in this paragraph, but which applies to the entirety hereof), the parties to this Instrument agree as follows:

DocuSign Envelope ID: 5ABB131F-9DD2-4CA3-B98B-0307C782A7BF

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

# PROMISSORY NOTE
## (Continued)

(a)   This Instrument may be signed manually and in one or more counterparts, each of which shall constitute one and the same agreement and may be (i) delivered in person, via mail, hand delivery, overnight delivery or via other physical methods accepted by Lender or (ii) delivered via facsimile transmission, via sending a scanned version of this Instrument (such as a PDF) via email or other electronic methods accepted by Lender. This Instrument, as so signed and delivered as described in this clause (a) above, shall (i) constitute an original hereof, (ii) be a valid and binding agreement and shall be fully admissible in any court of law or otherwise and under any and all state and federal rules of evidence and (iii) if a promissory note, be enforceable under Uniform Commercial Code (UCC) Section 3-309, UCC Section 3-604, or any other similar statute (with any provision thereof to the contrary being waived hereby), without regard to any loss or destruction of any written counterpart hereof, the parties hereto agreeing that the possession or maintenance of a signed and delivered scanned, electronic or digital version or copy hereof shall constitute possession hereof under UCC Section 3-309 or any other similar statute (with any provision thereof to the contrary being waived hereby), and shall not constitute the destruction hereof and shall not result in the cancellation or discharge of any obligation evidenced hereby, notwithstanding UCC Section 3-604 or any other similar statute (with any provision thereof to the contrary being waived hereby).

(b)   This Instrument may also be signed and delivered via electronic means, including, without limitation, via services provided by DocuSign, Inc., or any other electronic signature service provider accepted by Lender (each, an "E-Sign Provider"). This Instrument, as so signed and delivered as described in this clause (b) above, shall constitute a valid and binding agreement, with the same force and effect of an original, manually signed agreement, and shall be fully admissible in any court of law or otherwise and under any and all state and federal rules of evidence. The foregoing in this clause (b) shall be supplementary to and shall not limit any similar provisions the parties hereto have agreed to when using the services of an E-Sign Provider to sign and deliver this Instrument, and each of such similar E-Sign Provider provisions shall not be excluded by any integration clause contained in this Instrument, but shall be included as a part of this Instrument, except to the extent that there is any conflict between such similar E-Sign Provider provisions and the provisions of this Instrument, in which case the provisions of this Instrument shall prevail.  In the event that this Instrument is promissory note issued, signed and delivered as described in this clause (b) above, the maker hereof, as issuer, has agreed that this Instrument is a transferable record under the Electronic Signatures in Global and National Commerce Act (ESIGN), Uniform Electronic Transactions Act (UETA) and any other state electronic signature statute, and, without limiting the foregoing, with the effect that the holder of this Instrument (or any party that has control hereof) shall have all rights and defenses as if a holder in due course under the UCC, without the requirement of any physical delivery, possession, or indorsement.

(c)   Each electronic version or scanned copy of this Instrument shall also constitute an electronic record established and maintained by the parties hereto in the ordinary course of business, shall constitute an original written record when printed from electronic files, and any and all such printed copies shall be treated to the same extent and under the same conditions as other original business records created and maintained in documentary form. Lender shall be entitled to rely on the scanned or other electronic signatures of all parties to this Instrument without further verification thereof and without obligation to review the appearance or form of any such electronic signature. Without limiting the effectiveness of any signature to, or delivery of, this Instrument by any of the parties hereto as described in this paragraph above, in addition to the foregoing, all parties hereto agree to manually execute a counterpart of this Instrument and deliver the same to Lender promptly if requested by Lender.

**CREDITING OF PAYMENTS.** Payments received after Lender cut-off times established from time to time or on weekends or bank holidays will be credited as of the next Business Day.

**DEFINITIONS RELATED TO INDEX (DAILY SIMPLE SOFR RATE).** As used in this Note, the following capitalized terms will have the meanings indicated:

"Daily Simple SOFR Rate" means a rate based on SOFR which accrues interest on a simple daily basis in arrears, with the conventions for this rate being established by Regions in accordance with the conventions selected or recommended by the Administrator for determining "Daily Simple SOFR" for business loans, with the relevant SOFR rate being applied for any day of determination being either (i) for any day of determination that is a SIFMA Business Day, the SOFR rate for the fifth (5th) prior SIFMA Business Day and (ii) for any day of determination that is not a SIFMA Business Day, then the SOFR rate that was in use for this Loan, pursuant to clause (i), for the immediately preceding SIFMA Business Day, provided, in the case of clause (i) and clause (ii) above, such lesser or greater number of lookback days may be elected by Regions from time to time in its sole discretion; further provided, that if Regions decides that any convention for Daily Simple SOFR is not administratively feasible for Regions or does not exist, then, Regions may establish another convention in its sole discretion. Any change in Daily Simple SOFR due to a change in SOFR shall be effective from and including the effective date of such change in SOFR without notice to the Borrower.

"Lender Business Day" means any day that is not (i) a Saturday, (ii) a Sunday, or (iii) another day that is a legal holiday under the laws of the State of Alabama and is a day on which Lender is closed.

"SIFMA Business Day" means any day that is not (i) a Saturday, (ii) a Sunday, or (iii) a day on which the Securities Industry and Financial Markets Association recommends that the fixed income departments of its members be closed for the entire day for purposes of trading in United States government securities.

"SOFR" means a rate per annum equal to the secured overnight financing rate published by the Federal Reserve Bank of New York (or a successor administrator of the secured overnight financing rate) (the "Administrator") on the website of the Federal Reserve Bank of New York, currently at http://www.newyorkfed.org (or any successor source for the secured overnight financing rate identified by the administrator of the secured overnight financing rate from time to time) with the rate in respect of any given day being the rate published by the Administrator the following SIFMA Business Day, subject to any corrections published by the Administrator.

**INDEX UNAVAILABLE.** As used in the "Variable Interest Rate" section above, "unavailable" means that Lender, at any time or from time to time, determines that (a) the Index is unavailable, (b) the Index cannot be determined, (c) the Index does not adequately reflect the cost to Lender of making, funding, or maintaining the Loan, (d) the use of the Index has become impracticable or unreliable, (e) the Index is no longer representative of the underlying market or economic reality, or (f) it is no longer lawful for Lender to lend at any rate based on the Index.

**REPLACEMENT INDEX AND MARGIN ADJUSTMENT.** If Lender designates a substitute index (the "Replacement Index") as provided in the "Variable Interest Rate" section above, Lender may also determine at such time or from time to time thereafter that a Margin adjustment is necessary to produce a comparable interest rate to the interest rate that would have applied based on the Index. Upon such determination, Lender will designate the amount of such Margin adjustment (which may be a positive or a negative number) and adjust the Margin by that amount (and the result will be the "Adjusted Margin"). Lender will provide notice to Borrower of the Replacement Index, any Margin adjustment, and the Adjusted Margin, as applicable, and their effective date. Thereafter, the Replacement Index shall be deemed to be and shall become the operative interest rate index for purposes of this Note and any other loan documents, and this Note shall continue to bear interest on the unpaid principal amount from the effective date of such designation(s) through repayment thereof at the Replacement Index plus the Margin or the Adjusted Margin, as applicable (subject to any minimum interest rate floor set out in the Variable Interest Rate Section above and to increase to or by any applicable default rate). In any event, the Replacement Index will not be less than the greater of zero percent (0%) per annum or any minimum index floor set out in the Variable Interest Rate Section above. The Replacement Index may not necessarily be the Lender's most favorable lending rate or interest rate index. Any determination or designation made by Lender under this paragraph shall be made in Lender's sole and absolute discretion and shall be conclusive and binding absent manifest error.

**TECHNICAL, ADMINISTRATIVE, OPERATIONAL CHANGES.** Lender has the right from time to time, without any further action or consent of Borrower or any other party, to implement any technical, administrative, or operational changes that Lender decides may be appropriate to reflect the adoption and implementation of the "Variable Interest Rate" or "Replacement Index and Margin" Sections above and to permit the administration thereof by Lender in a manner substantially consistent with market practice (or, if Lender determines that adoption of any portion of such market practice is not administratively feasible or if Lender determines that no market practice for the administration of such Sections of this Note exists, in such other manner of administration as Lender decides is reasonably necessary in connection with the administration of the loan). Such technical, administrative, or operational changes may include, without limitation, changes to the definition of "Business Day" or the determination of any interest period, the timing and frequency of determining rates and making and crediting of payments, implementation and length of any lookback period, and other technical, administrative, or operational matters.

**ANNUAL REVIEW.** Borrower agrees that Borrower will provide Lender with a current financial statement, a new credit application, or both, annually, on forms provided by Lender.  Based upon this information Lender will conduct an annual review of Borrower's Credit Line Account. Borrower also agrees Lender may obtain credit reports on Borrower at any time, at Lenders sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in Borrowers financial condition.  Borrower authorizes Lender to release information about Borrower to third parties as described in Lenders privacy policy and Lenders Fair Credit Reporting Act notice, provided Borrower did not opt out of the applicable policy, or as permitted by law.  Based upon a material adverse change in Borrowers financial condition (such as termination of employment or loss of income) Lender may suspend Borrowers Credit Line.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such details as Lender may reasonably request.

**UNCONDITIONALLY CANCELLABLE.** Lender may, at any time, with or without cause, refuse to make advances or otherwise extend credit under this Note (to the extent permitted under applicable law).

**PROHIBITED USES OF PROCEEDS.** No portion of the proceeds of this Loan or any Advance shall be used (i) to finance or refinance any commercial paper issued by Borrower, or (ii) in any manner that causes or might cause this Loan or such Advance or the application of such

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

**PROMISSORY NOTE**
**(Continued)**

Loan No: ▮▮▮▮▮▮▮▮8839                                                                                      Page 4

Advance to violate Regulation T, Regulation U or Regulation X of the Board of Governors of the Federal Reserve System as in effect from time to time or any other regulation thereof or to violate the federal Securities Exchange Act.

**AUTO DEBIT PROVISION.**

063104668
Routing Number (Please call your financial
              institution if you are unsure)

▮▮▮▮3263
DDA/RSV Account Number

Borrower authorizes Lender to initiate entries to Borrower's checking or savings account at the financial institution indicated above for the purpose of making Borrower's periodic loan payments.  Borrower also authorizes the financial institution to withdraw these payments from Borrower's account.

Borrower understands that, in accordance with the terms of this loan, Borrower's payment may change from time to time.  Lender is authorized to change the amount of the charge to Borrower's checking or savings account.  Borrower understands that Lender will provide prior notice of the new payment amount to Borrower to the extent required under applicable law.  If more than one law requires prior notice of a payment change, Borrower agrees that notice provided pursuant to one law shall constitute notice in accordance with all laws.

**PRIOR NOTE.**  This note is made and executed for the purpose of continuing, modifying, amending, and restating the terms of that certain promissory note in the principal amount of $2,500,000.00, dated 8/17/2021, executed by the Borrower and payable to the Bank or its predecessor or assignor.  This note shall amend and restate the original note in its entirety. This note shall not constitute a novation, payment in full or satisfaction of the original note. This note shall continue to be secured by any and all collateral securing the original note.

**SUCCESSOR INTERESTS.**  The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.**  This Note is payable on demand.  The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand.  If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.  Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable).  Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower.  Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.  Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor.  Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.  All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.  All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.  The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**MI PULPE, LLC**

DocuSigned by:

*Marco A Villar*

By: _____
     E48472125C6B427

**MARCO A VILLAR , Managing Member of MI PULPE, LLC**

LaserPro, Ver. 21.2.0.029  Copr. Finastra USA Corporation 1997, 2022.   All Rights Reserved.   - FL  E:\Prosuite\CFI\LPL\D20.FC  TR-10009639  PR-GDPO10