**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:22-cv-23920-JEM/Becerra

REGIONS BANK,

                Plaintiff,

v.

MI PULPE, LLC, *et al.*,

                Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** came before the Court on Plaintiff Regions Bank's ("Plaintiff") Motion for Final Default Judgment and Incorporated Memorandum of Law (the "Motion"), ECF No. [15]. Plaintiff seeks final default judgment as to both Defendants Mi Pulpe, LLC ("Mi Pulpe") and Marco Antonio Villar Mondragon a/k/a Marco Antonio Villar ("Villar") (collectively, "Defendants"). *Id.* Defendants did not file a response to the Motion, and the time to do so has passed. Upon due consideration of Plaintiff's Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that the Motion be **GRANTED**.

## I.      BACKGROUND

This action arises out of three related credit agreements between Plaintiff and Defendants. Plaintiff is a banking corporation that entered into a series of agreements with Defendant Mi Pulpe, a limited liability company, and Defendant Villar, the principal member of Mi Pulpe. ECF No.

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [21].

[1] ¶¶ 2–3.  First, in or about March 2021, Mi Pulpe requested and obtained a line of credit from Plaintiff in the amount of $2,500,000.00.  *Id.* ¶ 8.  On March 1, 2022, the line of credit was increased to $4,500,000.00 (the "Loan").  *Id.*  In connection with the Loan, Mi Pulpe executed a demand promissory note (the "Note") in the amount of $4,500,000.00 and delivered the same to Plaintiff.  *Id.* ¶ 9.  Thereafter, at the request of Mi Pulpe, Plaintiff disbursed the full $4,500,000.00 principal amount on the Loan to Mi Pulpe.  *Id.* ¶ 11.  Second, also in connection with the Loan, Villar executed a commercial guaranty (the "Guaranty") in which Villar "unconditionally guaranteed all of Mi Pulpe's indebtedness to [Plaintiff], then existing or thereafter arising or acquired, including under the Note," and delivered the same to Plaintiff.  *Id.*  Finally, on or about August 16, 2021, Plaintiff entered into a commercial card agreement with Mi Pulpe, wherein Plaintiff provided Mi Pulpe with a purchase credit card account with a purchase limit of $450,000.00 (the "Commercial Card Agreement").  *Id.* ¶ 14.  Thereafter, Mi Pulpe charged a total of $454,056.21 on the purchase credit card.  *Id.* ¶ 16.

Sometime prior to October 28, 2022, Plaintiff alleges that Mi Pulpe defaulted on the Loan by:

> (i) failing to promptly inform [Plaintiff] in writing of multiple litigation actions filed against it and Villar by creditors and affecting the Collateral for the Loan; (ii) allowing itself to be acquired by another company without [Plaintiff's] prior written consent; (iii) selling, transferring, disposing, and further encumbering and pledging the Collateral to other third parties, outside of Mi Pulpe's ordinary course of business, without [Plaintiff's] prior written consent; (iv) failing to provide Regions with its required monthly Borrowing Base Certificate, supporting Accounts Receivable Aging Report and Inventory Report for September 30th of [2022]; (v) failing to make payment of the unpaid balance of the Purchase Card when due; (vi) causing an unpaid overdraft balance to exist and continue in its deposit account; and (vii) causing or allowing certain adverse actions and changes in its business to occur and be continuing which Regions reasonably believes will materially affect Mi Pulpe's ability to pay the Loan as well as puts [Plaintiff's] interest in the Collateral at risk.

*Id.* ¶ 12.  Additionally, Mi Pulpe failed to make its monthly payments pursuant to the Commercial Card Agreement for both September 2022 and October 2022.  *Id.* ¶ 15.  As a result, October 28, 2022, Plaintiff elected to accelerate the maturity of the Loan and sent a letter to Defendants demanding that Defendants pay in full the amounts due on the Loan, the purchasing card (including interest), and any overdraft amounts.  *Id.* ¶¶ 13, 17.  Defendants did not respond to the demand letter.  *Id.* ¶ 21.

Plaintiff filed the Complaint in the instant action on December 1, 2022.  ECF No. [1]. Plaintiff asserts three claims against Defendants: (1) an "Action Against Mi Pulpe on the Note" (Count I); (2) an "Action Against Mi Pulpe on the Commercial Card Agreement" (Count II); and (3) an "Action against Villar on the Guaranty" (Count III).  *See* ECF No. [1].  Although not named as such, each count outlines a claim for breach of contract and/or guaranty.

As to Count I, Plaintiff alleges that Mi Pulpe breached the Note by failing to pay the amounts due on the same, and seeks a total of $4,500,000.00, representing the total principal amount of the Loan, plus interest, late fees, costs, and attorneys' fees.  *Id.* ¶¶ 23–25.  As to Count II, Plaintiff alleges that Mi Pulpe breached the Commercial Card Agreement by failing to pay the amounts due on the same, and seeks a total of $454,056.21, representing the outstanding balance on the purchase card, plus interest, costs, and reasonable attorneys' fees pursuant to the terms of the Commercial Card Agreement.  *Id.* ¶¶ 26–28.  As to Count III, Plaintiff alleges that Villar breached the Guaranty by failing to pay the amounts due under both the Note and the Commercial Card Agreement and seeks from Villar: (1) $4,500,000.00, representing the total principal amount of the Loan, plus interest, late fees, costs, and attorneys' fees; and (2) $454,056.21, representing the outstanding balance on the purchase card, plus interest, costs, and reasonable attorneys' fees pursuant to the terms of the Commercial Card Agreement.  *Id.* ¶¶ 29–31.

Defendants were served with the Complaint on December 13, 2022.  *See* ECF Nos. [10-1] (return of service on Mi Pulpe); [10-2] (return of service on Villar).  When Defendants failed to respond to the Complaint, Plaintiff filed a Motion for Entry of Clerk's Default, ECF No. [11], and a Clerk's Default was entered.  ECF No. [12].  The District Court then entered an Order on Final Default Judgment Procedure, ECF No. [13], which was served on Defendants on January 9, 2023. ECF No. [14] (certificate of service).

Thereafter, Plaintiff filed the instant Motion, requesting the entry of default judgment against Defendants.  ECF No. [15].  Plaintiff requests the following amounts from Mi Pulpe and Villar: "(a) the principal amount of $4,500,000.00; (b) accrued interest through January 18, 2023 in the amount of $124,774.45, accruing at a *per diem* amount of $945.00; (c) late fees of $4,743.27; (d) $1,238.32 in connection with the deposit account overdraft; (e) on the Purchase Card $447,353.90, plus late fees of $13,516.20 for a balance due of $460,870.10; and (f) the reasonable attorney's fees, costs, and expenses incurred by [Plaintiff] in connection with the indebtedness due and owing on the Loan, which will be more fully described in a separate motion and declaration being filed in connection with the Motion."  *Id.* at 5.  Plaintiff asserts that as of February 8, 2023, Plaintiff has incurred attorneys' fees in the amount of $63,133.00 and expenses in the amount of $1,329.40.  *Id.*

In support of its Motion, Plaintiff filed the Affidavit of J. Patrick Carrigan, a Senior Vice President of Plaintiff, ECF No. [16], with accompanying exhibits; the Affidavit of Francisco J. Roza, counsel to Plaintiff, ECF No. [17]; and the Affidavit of Peter M. Hockman, Esq., an attorney who opines on the reasonableness of counsel for Plaintiff's proffered attorneys' fee amounts, ECF No. [18].  On June 29, 2023, pursuant to an Order of the Court, ECF No. [23], Plaintiff filed a

Supplemental and Amended Affidavit of Francisco J. Roza, ECF No. [24], and a Supplemental and Amended Affidavit of J. Patrick Carrigan.  The Motion is now ripe for review.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth the procedure for obtaining a default judgment.  Subsection (a) provides that the Clerk of Court must enter default when the defendant fails "to plead or otherwise defend."  FED. R. CIV. P. 55(a).  Upon the entry of a clerk's default, the Court must enter a judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, . . . on the plaintiff's request, with an affidavit showing the amount due . . . ."  *Id.* at 55(b)(1).  While "[a]ll well-pleaded allegations of fact in the complaint are deemed admitted upon entry of default, [] before entering a default judgment the Court must ensure . . . that the complaint adequately states a claim for which relief may be granted."  *United State v. Eye*, No. 10-cv-60739, 2010 WL 11610271, at *2 (S.D. Fla. Aug. 31, 2010) (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)).  That is, in determining whether default judgment may be entered, courts must review the allegations in the complaint to determine whether there is a "sufficient basis in the pleadings for the particular relief sought."  *United States v. Genesis II Church of Health & Healing*, 476 F. Supp. 3d 1283, 1289 (S.D. Fla. 2020) (citing *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007)); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (noting that the "sufficient basis" standard is akin to the motion to dismiss standard).  Once liability has been established, "[d]amages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts."  *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (quotations omitted).  Rule 55 does not require an evidentiary hearing on damages where the

amount claimed is either liquidated or capable of arithmetic calculation.  *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746–47 (11th Cir. 2017) ("[E]videntiary hearings are required in all but limited circumstances, such as when hearing any additional evidence would be truly unnecessary to a fully informed determination of damages") (quotations omitted); *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that under Rule 55, district courts are not required to conduct evidentiary hearings).

## III.    ANALYSIS

Plaintiff seeks default judgment as to all three counts of its Complaint.  Namely, Plaintiff asserts Count I against Mi Pulpe for breach of the Note, Count II against Mi Pulpe for breach of the Commercial Card Agreement, and Count III against Villar for breach of the Guaranty.  *See* ECF No. [1].  For the reasons outlined below, the undersigned finds that the Motion should be granted as to all counts, and Plaintiff should be awarded damages of **$5,090,387.82**, jointly and severally[2] from Defendants as follows, and an award of attorneys' fees and costs to be determined by separate motion.

### A.  Plaintiff Has Adequately Pled All Claims.

To establish a breach of contract under Florida law, a plaintiff must show: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).  While Plaintiff's Motion frames each count as a distinct cause of action, each is governed by the same elements as breach of contract.  *See, e.g., Koskinen v. Gonzalez*, No. 17-cv-81096, 2019 WL 7837191, at *2 (S.D. Fla. June 17, 2019) (analyzing breach of promissory note as breach of contract claim); *Ecp Station I*

---

[2] While each count is asserted against one defendant only, the total debt owed is $5,090,387.82, for which both Defendants are ultimately liable as described herein.

*LLC v. Chandy*, No. 8:15-cv-2523-T-JSS, 2016 WL 3883028, at *3 (M.D. Fla. June 29, 2016) ("As such, a breach of guaranty claim is akin to a breach of contract claim under which the guarantor is alleged to have breached its promise by failing to pay the debt of another on the default of the person primarily liable for payment.") (citing *New Holland, Inc. v. Trunk*, 579 So. 2d 215, 217 (Fla. 5th DCA 1991)).

As to Count I, Plaintiff has adequately pled breach of the Note against Mi Pulpe. Plaintiff alleges that Mi Pulpe executed and delivered the Note to Plaintiff for the principal amount of $4,500,000.00. ECF No. [1] ¶ 9. Additionally, Plaintiff attached a copy of the Note as an exhibit to the Complaint. ECF No. [1-4]. Plaintiff alleges that Mi Pulpe breached the terms of the Note by failing to pay the amounts due and owing on the Note after properly accelerating the maturity of the Loan and demanding payment in full. ECF No. [1] ¶ 13. Finally, Plaintiff alleges that it was damaged by Mi Pulpe's failure to pay, in the amount of $4,500,000.00, representing the total principal amount of the Loan, plus interest, late fees, costs, and attorneys' fees. *Id.* ¶ 25.

As to Count II, Plaintiff has adequately pled breach of the Commercial Card Agreement against Mi Pulpe. Plaintiff alleges that Mi Pulpe executed and delivered the Commercial Card Agreement to Plaintiff whereby Plaintiff provided a purchase card to Mi Pulpe with a credit limit of up to $450,000.00 in exchange for monthly payments and other fees. *Id.* ¶ 14. Additionally, Plaintiff attached a copy of the Commercial Card Agreement as an exhibit to the Complaint. ECF No. [1-10]. Plaintiff alleges that "Mi Pulpe breached the Commercial Card Agreement by failing to make its monthly payments due for September and October, 2022." ECF No. [1] ¶ 15. Finally, Plaintiff alleges that it was damaged by Mi Pulpe's failure to pay, in the amount of $454,056.21, representing the outstanding balance on the purchase card, plus interest, costs, and reasonable attorneys' fees pursuant to the terms of the Commercial Card Agreement. *Id.* ¶ 28.

As to Count III, Plaintiff has adequately pled breach of the Guaranty against Villar. Plaintiff alleges that Villar executed and delivered the Guaranty to Plaintiff in which Villar personally guaranteed all of Mi Pulpe's debts to Plaintiff, whether existing or incurred in the future, as an inducement for Plaintiff to make the Loan to Mi Pulpe. *Id.* ¶ 9.  Additionally, Plaintiff attached a copy of the Guaranty as an exhibit to the Complaint. ECF No. [1-6].  Plaintiff alleges that "[u]nder the Guaranty, Villar is immediately and unconditionally liable to [Plaintiff] for Mi Pulpe's obligations under the Note and the Commercial Card Agreement," and therefore Villar has breached the Guaranty by failing to pay the amounts owed by Mi Pulpe to Plaintiff.  ECF No. [1] ¶ 31.  Finally, Plaintiff alleges that it was damaged by Villar's failure to pay, in the amount of: (1) $4,500,000.00, representing the total principal amount of the Loan, plus interest, late fees, costs, and attorneys' fees; and (2) $454,056.21, representing the outstanding balance on the purchase card, plus interest, costs, and reasonable attorneys' fees pursuant to the terms of the Commercial Card Agreement. *Id.* Thus, Plaintiff has met all elements of Counts I–III and is accordingly entitled to final default judgment as to liability on all claims.

### B.  Plaintiff Is Entitled to Damages in the Amount of $5,090,387.82.

Once liability has been established, "[d]amages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)) (quotations omitted).  Rule 55 does not require an evidentiary hearing on damages where the amount claimed is either liquidated or capable of arithmetic calculation. *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746–47 (11th Cir. 2017) ("[E]videntiary hearings are required in all but limited circumstances, such as when hearing any additional evidence would be truly unnecessary to a fully informed

determination of damages") (quotations omitted); *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that under Rule 55, district courts are not required to conduct evidentiary hearings).

### i. Count I

On Count I, Plaintiff seeks four categories of damages[3]: (1) the principal Loan amount of $4,500,000.00; (2) interest accruing at $945.00 *per diem* through January 18, 2023, in the amount of $124,774.45; (3) late fees of $4,743.27; and (4) overdraft fees of $1,238.32 for a deposit account.  ECF Nos. [1] ¶ 24–25; [25] at 2.  In support of these damages, Plaintiff filed the Affidavit of J. Patrick Carrigan, a Senior Vice President of Plaintiff, with accompanying exhibits (the "Carrigan Declaration"), ECF No. [16], as well as a Supplemental and Amended Affidavit of J. Patrick Carrigan, with accompanying exhibits (the "Carrigan Supplement"), ECF No. [25].

As to the principal amount, the Carrigan Declaration states that Plaintiff "disbursed the full $4,500,000.00 in principal under the Loan that remains unpaid," and that "[t]here is now due and owing to [Plaintiff] under the Loan: the principal [] amount of $4,500,000.00[.]"  ECF No. [16] ¶¶ 9, 20.  Additionally, the Note is attached as an exhibit to the Carrigan Declaration, and clearly states both that the principal amount is $4,500,000.00, and that "Borrower [defined as Mi Pulpe] will pay this loan in full immediately upon Lender's [defined as Plaintiff's] demand."  ECF No. [16-1] at 1.  The Note is signed by Villar in his capacity as Managing Director of Mi Pulpe.  *Id.* at 4.  The Court finds that Plaintiff's showing is sufficient to establish the principal amount of $4,500,000.00 in damages against Mi Pulpe on Count I.

---

[3] Additionally, Plaintiff seeks reasonable attorneys' fees on all counts, which is addressed by the undersigned in Section III(B)(iv) *supra*.

As to the interest amount, the Carrigan Declaration states that "[t]here is now due and owing to Regions under the Loan: . . . accrued interest at the rate of $945.00 *per diem* through January 18, 2023 in the amount of $124,774.45[.]"  ECF No. [16] ¶ 20.  The Note, attached as an exhibit to the Carrigan Declaration, contains multiple provisions relating to the interest rate of the Loan, including, "MI PULPE, LLC ("Borrower") promises to pay Regions Bank ("Lender") . . . the principal amount of Four Million Five Hundred Thousand & 0/100 Dollars ($4,500,000.00) or so much as may be outstanding, *together with interest on the unpaid outstanding principal balance of each advance*," and "[i]n addition, Borrower [Mi Pulpe] will pay regular *monthly payments of all accrued unpaid interest* due as of each payment date."  ECF No. [16-1] at 1 (emphasis added).  The interest rate as outlined in the Note is variable and subject to increase upon the event of a default, however, "in no event will the interest rate exceed the maximum interest rate limitations under applicable law," which is defined as Florida law within the Note.  *Id.*  The Carrigan Supplement states that "[i]nterest was payable monthly and calculated at an adjustable Daily Simple SOFR Rate from August 16, 2022, through January 18, 2023, for a total of $124,774.45 which includes one day interest from 01/17/2023 to 01/18/2023 calculated at the daily SOFR of 7.56% p.a. or $952.50."  ECF No. [25] at 2.  Additionally, "loan system generated images" reflecting calculations of the interest rate are attached to the Carrigan Supplement as Composite Exhibit A.  ECF No. [25-1].  The loan system generated images are consistent with the Carrigan Supplement, and reflect an interest amount of $124,774.45 owed on the Note.  *Id.* at 4.  The Court finds that Plaintiff's showing is sufficient to establish the principal interest amount of $124,774.45 in damages against Mi Pulpe on Count I.

As to the late fees, the Carrigan Declaration states that "[t]here is now due and owing to Regions under the Loan: . . . late fees of $4,743.27[.]"  ECF No. [16] ¶ 20.  The Note, attached as

an exhibit to the Carrigan Declaration, contains the following late fee provision: "[i]f a payment is 15 days or more late, Borrower [Mi Pulpe] will be charged 5.000% of the unpaid portion of the regularly scheduled payment."   ECF No. [16-1] at 1.   The Carrigan Supplement states that "Defendants missed the regularly scheduled interest payments due on September 17, 2022, October 17, 2022, November 17, 2022, and December 17, 2022.   At that time, the unpaid portions of the regularly scheduled interest payments were, respectively, $21,072.90, $22,231.42, $25,122.63, and $26,438.75."   ECF No. [25] at 3.   The Carrigan Supplement further states that pursuant to the late fee provision of the Note, "5.000% of each such scheduled interest payment was charged from October 17, 2022 to January 17, 2023 for a total of $4,743.27."   *Id.*   Additionally, "loan system generated images" reflecting calculations of the late fees are attached to the Carrigan Supplement as Composite Exhibit A.   ECF No. [25-1].   The loan system generated images are consistent with the Carrigan Supplement, and reflect an interest amount of $4,743.27 owed on the Note.   *Id.* at 4–5.   The Court finds that Plaintiff's showing is sufficient to establish the late fee amount of $4,743.27 in damages against Mi Pulpe on Count I.

As to the overdraft fees, the Carrigan Declaration states that "[t]here is now due and owing to Regions under the Loan: . . . $1,238.32 in connection with the deposit account overdrafts."   ECF No. [16] ¶ 20.   The Carrigan Supplement also contains one brief reference to the account overdrafts, and includes an attachment of a "business checking" account reflecting the overdraft amount proffered.   ECF Nos. [25] at 3; [25-2].   However, neither the Complaint nor the Note contains any mention of a deposit account held by Mi Pulpe with Plaintiff.   Indeed, the overdraft fees appear to be connected to a third account, unrelated to either the Note or the Commercial Card Agreement.   *See* ECF No. [16-6] at 2.   Plaintiff's demand letter, sent to Defendants and attached as an exhibit to the Carrigan Declaration, outlines three categories of debts owed to Plaintiff: "Loan

No. XXX8839", "Account No. XXX3263", and "Purchasing Card." *Id.* The only reference to overdraft fees appears within the Account No. XXX3263 category, which is neither mentioned in the Complaint nor explained in the Motion. *See* ECF No. [15] ("Additionally, Mi Pulpe is liable to Regions for overdrawing its deposit account by $1,238.32."). Federal Rule of Civil Procedure 54 instructs that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Thus, because the allegations in the Complaint are limited to breach of the Note and the Commercial Card Agreement—neither of which allude to a deposit account or related overdrafts—Plaintiff's showing is not sufficient to recover the overdraft amount of $1,238.32. As such, the Court finds that Plaintiff should be awarded damages totaling **$4,629,517.72** from Mi Pulpe on Count I, which includes the principal amount, the interest amount, and the late fees, but does not include the overdraft amount.

### ii.  Count II

On Count II, Plaintiff seeks two categories of damages: (1) $447,353.90 due on the purchase card in connection with the Commercial Card Agreement; and (2) $13,516.20 in late fees on the same purchase card. ECF No. [16] ¶ 20. The Carrigan Declaration states "[t]here is now due and owing to Regions under the Loan: . . . $447,353.90 on the Purchase Card; [and] late fees on the Purchase Card of $13,516.20," and "Mi Pulpe has made charges on the Purchase Card of $447,353.90 plus $13,516.20 in late fees for a total amount due of $460,870.10, which remain unpaid." *Id.* ¶¶ 14, 20. The Commercial Card Agreement is attached as an exhibit to the Carrigan Declaration, and states, "[r]egardless of the billing option that Company [defined as Mi Pulpe] selects, Company agrees to pay or have paid the New Balance in full on or before the Payment Due Date shown on each Company Statement," and "[i]f any New Balance on an Individual Statement or Company Statement is not paid in full within five (5) days of the Payment Due Date,

Company shall pay a Late Fee equal to the greater of (a) $10 or (b) one and one-half percent (1.5%) of that portion of the New Balance that remains unpaid." ECF No. [16-7] at 4. The Carrigan Supplement adds that "Defendants missed the payments due on October 17, 2022 and November 18, 2022. At those dates, the unpaid New Balances were, respectively, $447,350.90 and $454,059.21. Accordingly, the Late Fees charged were 1.5% of the respective amounts, or $6,708.31[4] and $6,810.89 for a total of $13,516.20." ECF No. [25] at 3. Additionally, "loan system generated images" reflecting calculations of the late fees are attached to the Carrigan Supplement as Composite Exhibit A. ECF No. [25-1]. The loan system generated images are consistent with the Carrigan Supplement, and reflect an interest amount of $460,870.10 owed under the Commercial Card Agreement. *Id.* at 6. The Court finds that Plaintiff's showing is sufficient to establish the total amount of **$460,870.10** in damages against Mi Pulpe on Count II.

### iii.   Count III

On Count III, Plaintiff seeks a total of $5,091,626.14 from Villar, consisting of: $4,630,756.04 owed under Villar's Guaranty for unpaid amounts on the Note, and $460,870.10 owed under Villar's Guaranty for unpaid amounts on the Commercial Card Agreement. ECF No. [16] ¶¶ 20–21. The Carrigan Declaration states, "[u]nder the terms of the Note and Guaranty, Villar is responsible for paying all indebtedness due and owing to Regions by Mi Pulpe, on the Loan, the Purchase Card and the deposit account overdraft, including, but not limited to, principal damages, interest, reasonable attorney's fees, costs, and expenses consistent with the foregoing." *Id.* ¶ 21. Additionally, the Guaranty is attached as an exhibit to the Carrigan Declaration. ECF No. [16-3]. The Guaranty defines Plaintiff as the "Lender," Mi Pulpe as the "Borrower," and

---

[4] The Court notes that 1.5% of $447,350.90 is $6,710.26. However, the Court will award Plaintiff only the amount it requests.

Villar as the "Guarantor."  *Id.* at 1.  The Guaranty provides that "[f]or good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents," and defines the term Indebtedness to include, "any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender."  *Id.*  Because Villar unconditionally guaranteed performance under "any and all debts, liabilities and obligations" owed by Mi Pulpe to Plaintiff, including "any present or future judgments against Borrower . . . whether joint or several or joint and several," the Court finds that Villar should be obligated to pay any unpaid amounts on both the Note and the Commercial Card Agreement.  Given the findings above, the Court finds that Plaintiff should be awarded damages totaling **$5,090,387.82** from Villar on Count III.[5]

### iv.  Attorneys' Fees and Costs

Plaintiff also moves for attorneys' fees on Counts I, II, and III, pursuant to the respective agreements at issue in each count.  *See* ECF No. [15] at 9–10.  Under the American Rule, "each party is traditionally responsible for its own attorney's fees."  *In re Home Depot, Inc.*, 931 F.3d 1065, 1078 (11th Cir. 2019) (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010)).  There are three exceptions to this Rule: "(1) when a statute grants courts the authority to direct the losing party to pay attorney's fees; (2) when the parties agree in a contract that one party will pay attorney's fees; and (3) when a court orders one party to pay attorney's fees for acting in bad faith."  *Id.* at 1079 (citation omitted).  Under Florida law, "attorney fee provisions in contracts

---

[5] This total is comprised of $4,629,517.72 owed by Mi Pulpe on the Note (Count I), and $460,870.10 owed by Mi Pulpe on the Commercial Card Agreement (Count II).

are strictly enforced and construed." *Fidelity Life Assoc. v. Cohen*, No. 15-cv-81552, 2017 WL

11220364, at *1 (S.D. Fla. Oct. 11, 2017) (citing *Succar v. Safra Nat'l Bank of N.Y.*, 237 F. App'x

526, 528 (11th Cir. 2007)).

> As to Count I, the Note provides:
>
> **ATTORNEYS' FEES; EXPENSES.**  Lender may hire or pay someone else to help collect this Note if Borrower does not pay.  Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction, and appeals.  If not prohibited by applicable law, Borrower will also pay any court costs, in addition to all other sums provided by law.

ECF No. [16-1] at 2.  As to Count II, the Commercial Card Agreement provides:

> **COLLECTIONS.**  Company agrees to pay all costs of collecting or attempting to collect any amounts due under this Agreement and all costs of defending any claim asserted against Bank arising out of or in connection with this Agreement, which costs shall include, without limitation, attorneys' fees and costs.  The terms and provisions of this Section shall survive the termination of this Agreement and/or deactivation of any Commercial Cards.

ECF No. [16-7] at 12.  Finally, as to Count III, the Guaranty provides:

> **Attorneys' Fees; Expenses.**  Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty.  Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Guarantor shall also pay all court costs and such additional fees as may be directed by the court.

ECF No. [16-3] at 2.  Given the plain language of the attorneys' fees provision in each agreement,

and the uncontested nature of their applicability, the Court finds that Plaintiff is entitled to

attorneys' fees for Counts I, II, and III.

Additionally, Plaintiff is entitled to its taxable costs as the prevailing party in this action. Under Federal Rule of Civil Procedure 54(d)(1), a prevailing party is entitled to recover costs as a matter of course unless directed otherwise by a court or statute. *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991) (citing FED. R. CIV. P. 54(d)(1)). As an initial matter, there is no dispute that Plaintiff is the prevailing party in this action as against Defendants. Although Rule 54(d)(1) does not define the term "prevailing party," courts have generally interpreted it to require a change in the parties' legal relationship, through some type of court action. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604 (2001) (noting that two bases for attorney's fees, "enforceable judgments on the merits and court-ordered consent decrees[,] create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees.") (citations and quotations omitted), *superseded by statute on other grounds,* Open Government Act of 2007, Pub.L. No. 110–175, 121 Stat. 2524; *Simon Prop. Group, L.P. v. Taylor*, No. 20-14374, 2021 WL 4432686, at *2 (11th Cir. Sept. 27, 2021) ("To determine whether a defendant is a prevailing party, we ask whether the plaintiff was rebuffed [in its] efforts to effect a material alteration in the legal relationship between the parties" and "the rejection of the plaintiff's attempt to alter the parties' legal relationship must be marked by judicial imprimatur.") (citations and quotations omitted). This default final judgment, if adopted by the District Court, would constitute a change in the legal relationship of the Parties, as it establishes that Defendants are liable to Plaintiff on all counts of the Complaint. Thus, Plaintiff is considered the prevailing party herein and is entitled to costs under the Rule.

The Court now moves to the determination of the reasonable amount of attorneys' fees and costs to be awarded. The Eleventh Circuit utilizes the lodestar method to determine the reasonableness of an award of attorneys' fees. *Norman v. Housing Auth. of the City of*

*Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  The lodestar "is the product of the number of hours reasonably worked by a lawyer and a reasonable hourly rate." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) (citation omitted).  The fee applicant bears the burden of establishing entitlement to the amount of attorneys' fees sought.  *See Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir 1999); *Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *14 (S.D. Fla. July 15, 2011) ("A party seeking to recover attorneys' fees bears the burden of providing specific and detailed evidence so that a determination can be made of the necessity of the action and the reasonableness of the time claimed for the action.").

Plaintiff seeks attorneys' fees for the work of three attorneys and one paralegal on this matter.  ECF No. [24] at 2.  Attorney David S. Garbett, Esq. seeks an hourly rate of $485.00 for a total of 2.5 hours billed; attorney Francisco J. Roza, Esq. seeks an hourly rate of $450.00 for a total of 120.4 hours billed; attorney Zina Gabsi, Esq., seeks an hourly rate of $350.00 for a total of 22.3 hours billed; and paralegal Gemma Q. Guzman seeks an hourly rate of $185.00 for a total of 22.3 hours billed.  *Id.*  In total, Plaintiff seeks attorneys' fees in the amount of $75,163.00 for 189.9 hours billed on this default judgment matter.  *Id.*  In support of its amount of attorneys' fees, Plaintiff submitted the Affidavit of Francisco J. Roza, counsel to Plaintiff (the "Roza Affidavit"), ECF No. [17]; the Affidavit of Peter M. Hockman, Esq., an attorney who opines on the reasonableness of counsel for Plaintiff's proffered attorneys' fee amounts (the "Hockman Affidavit"), ECF No. [18]; and a Supplemental and Amended Affidavit of Francisco J. Roza (the "Roza Supplement"), ECF No. [24].  Plaintiff submitted its billing records as attachments to the Roza Supplement.  ECF No. [24] at 4–31.

The undersigned finds that while an award of attorneys' fees and costs is proper herein, the materials submitted are insufficient to establish a reasonable amount for the award.  First, the billing records submitted to the Court contain multiple duplicate entries for work performed.  For instance, both Invoice No. 58063 (submitted for work performed through November 21, 2022) and Invoice No. 58148 (submitted for work performed through January 24, 2023), reflect that on November 2, 2022, Mr. Roza billed 3.10 hours for "Commence gathering documents and information for drafting complaint and summons; review documents sent by bank; UCC-1 filings; conduct research on personal jurisdiction over several foreign secured creditors," for a total of $1,395.00.  *See* ECF No. [24] at 8, 11.  Both entries were included in the total submitted to the Court.  Similarly, both Invoice No. 58063 (submitted for work performed through November 21, 2022) and Invoice No. 58148 (submitted for work performed through January 24, 2023), reflect that on November 10, 2022, Mr. Roza billed 5.00 hours for "Continue drafting complaint (include counts for replevin and breach of Commercial Card Agreement) (3.6); work with G. Guzman to prepare spreadsheet of all UCC-1 filers to be addressed in complaint (1.4)" for a total of $2,250.00.  *Id.* at 9, 13.  Both entries were again included in the total submitted to the Court.  By the Court's initial calculation, the duplicate entries submitted for Mr. Roza alone exceed a total of $14,000.00.

Additionally, the billing records contain multiple entries for work that is not clearly related to the instant action.  For instance, Invoice No. 58223 (submitted for work performed through February 24, 2023) reflects that on December 2, 2022, Mr. Roza billed 0.20 hours for "Review order reflecting that TRO has been lifted and correspondence with client re same," where no Temporary Restraining Order has been entered in this action.  *See* ECF No. [24] at 20.  Similarly, Invoice No. 58063 (submitted for work performed through November 21, 2022) reflects that on October 14, 2022, Mr. Roza billed 2.40 hours for "Review email from P. Carrigan re: new

preliminary injunction matter; research court records in NY Ontario Cty to confirm legitimate Order and status of case; run conflict check and check sunbiz search on all named defendants and review results; prep. Email response to Bank. Review complaint," which cannot be referencing the instant action, as this action contains no preliminary injunction, does not involve New York State, and did not yet have a Complaint being drafted which would be capable of review. *Id.* at 5. As such, Plaintiff is directed to review the billing records submitted and revise them to reflect only reasonable amounts of work performed directly in this default judgment action, with all duplicate entries removed.

Accordingly, the undersigned **RECOMMENDS** that Plaintiff be permitted to amend and resubmit its request for attorneys' fees and costs in this action, with argument and/or legal authority as to why the proffered amounts are reasonable, to be determined through a separate motion.

## IV.    CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff's Motion for Final Default Judgment, ECF No. [15], be **GRANTED IN PART AND DENIED IN PART**, and the District Court enter an order as follows:

1.  **GRANTING** final default judgment against Defendant Mi Pulpe on Counts I and II, and against Defendant Villar on Count III.

2.  **GRANTING** Plaintiff a total award of **$5,090,387.82**, for which Defendants are liable jointly and severally, as described herein.

3.  **DENYING** Plaintiff's request for attorneys' fees and costs **WITHOUT PREJUDICE** and ordering Plaintiff to resubmit by separate motion a reasonable request for attorneys' fees and costs, as outlined herein, with a supporting memorandum of law, no later than 30 days from the date of the District Court's Order.

## V.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on August 2, 2023.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**